Culbertson *et al. v.* Munson *et al.*

Filed Jan. 5, 1886.

---

No. 12,283.

## CULBERTSON ET AL. *v.* MUNSON ET AL.

| | |
|---|---|
| 104 | 451 |
| 131 | 161 |
| 104 | 451 |
| 143 | 440 |
| 104 | 451 |
| 147 | 572 |
| 104 | 451 |
| 153 | 494 |
| 104 | 451 |
| 166 | 364 |
| 104 | 451 |
| 169 | 643 |

PLEADING.—*Complaint Good as to Part of Relief Asked.—Demurrer.*—A complaint which is sufficient as to part of the relief asked will repel a demurrer although insufficient as to other relief.

TAXES.—*Deed.— Void Sale.—State's Lien.*—The holder of the auditor's tax deed is entitled to enforce the State's lien, even if the sale is void, except where it is invalid for the causes enumerated in section 6495, R. S. 1881.

SAME.—*Enforcement of Lien.—Contract.—Agency.*—Mere representations by the vendee of a tax claim to the vendor, that he purchases it in the interest of the owner of the land, and thereby secures it at a reduction on the sum due, will not, in the absence of an agency or an agreement that the owner is to have the benefit of the reduction, prevent him from enforcing the lien for the full amount due.

SAME.—*Interest.—Act March 5, 1883.*—Under sections 3 and 4 of the act of March 5th, 1883, the purchaser at a tax sale, whether made before or after the taking effect of such act, is only entitled to interest at the rate of twenty per cent.

From the Marshall Circuit Court.

*D. D. Dykeman, W. T. Wilson* and *G. C. Taber*, for appellants.

*M. A. O. Packard* and *M. S. Coulter*, for appellees.

MITCHELL, J.—The plaintiffs brought this action to quiet title to a certain one hundred and sixty acre tract of land in Marshall county.

The defendants, after filing a general denial to the complaint, filed a cross complaint in two paragraphs, in both of which they sought to quiet the title to the same land in themselves.

In the first paragraph of the cross complaint, it was averred that the cross complainants were the owners, and in possession of the land described, and that the plaintiffs were asserting an unfounded title to it.

The second paragraph rested the right of the cross complainants specifically on a tax sale, and a title which it was alleged had accrued to them thereunder. It was also averred in the second paragraph that the cross complainants had made lasting and valuable improvements on the land while in possession under the tax deed. As alternative relief, this paragraph prayed that, in the event the cross complainants' title should prove defective, the court ascertain the amount due them for taxes, penalties, improvements, etc., and decree a lien in their favor for the amount.

Upon the final trial, it was decreed that the plaintiffs were the owners of the land, and that their title should be quieted, subject to a lien in favor of the cross complainants for the sum of $640.80, for taxes, interest, penalties, etc., and in the further sum of $300 for improvements.

The court below having overruled the plaintiffs' motion for a new trial, they have brought the record here on appeal, and assign for error the overruling of their demurrer to the cross complaint, and overruling their motion for a new trial.

The first paragraph of the cross complaint is not assailed. It is insisted, however, that the second is bad, for the reason that in specifying the character of title under which they claim, the cross complainants have not averred all the requisites of a good title.

It may be true that the paragraph under consideration was

not sufficient as a complaint to quiet title. The fact must be kept in view, however, that part of the relief demanded was, if the title asserted therein should prove defective, that the court should decree a lien for the taxes paid, together with the interest and penalties thereon and the improvements made by the defendants. It was, therefore, sufficient as to part of the relief demanded, and when a complaint is so far sufficient a demurrer to it is properly overruled. *Locke* v. *Catlett*, 96 Ind. 291, and cases cited.

It is argued that upon the facts stated the sale for taxes was unauthorized and void. If this view were conceded, yet, since the auditor issued his deed upon such sale, and the sale does not appear to have been invalid for any of the causes enumerated in section 6495, R. S. 1881, the holders of the deed were entitled to enforce the State's lien for taxes which, although the sale was utterly void, was nevertheless transferred to them. *Locke* v. *Catlett, supra.*

It appeared in evidence that one Jones was at one time the owner of the tax title, and that, at the request of Fred W. Munson, he transferred the title thus held to Stephen Munson, through whom the defendants claim. The sale from Jones to Stephen Munson was negotiated by Fred W. Munson. Stephen Munson subsequently transferred his interest to Fred W. and Louis L. Munson. The plaintiff offered to prove by Jones that Fred W. Munson, at the time the sale to Stephen Munson was negotiated, represented that he was acting for his (Munson's) wife and the plaintiffs, in making such purchase, and that he was making it for their benefit, and that by reason of these representations Jones was induced to sell his tax title for less than was actually due according to law. This evidence the court excluded, the defendants having withdrawn any objection to it.

It is argued that it was a legitimate defence to the appellees' claim to enforce a lien on the land for taxes, to show that they acquired their claim by misrepresentations made to Jones; that because Fred W. Munson, in negotiating the

sale from Jones to Stephen Munson, represented that he was acting on behalf of his wife and for the plaintiffs, Stephen Munson took the tax claim in trust for the plaintiffs, and that the transfer from Stephen Munson to Fred W. and his brother made them nothing more than trustees. The case of *Gwaltney* v. *Wheeler*, 26 Ind. 415, is relied on.

We do not think the case cited controls the case before us. In that case the facts were that Reitz and Haney recovered judgment against Wheeler, with a decree of foreclosure of a mortgage on real estate. Reitz and Haney sold the real estate upon the judgment, becoming the purchasers at the sale. Wheeler, the judgment debtor, about this time entered the military service of the United States and went to the seat of war. While Wheeler was thus absent, the appellant Gwaltney went to Reitz and Haney and fraudulently pretended to them that he was interested in the welfare of Wheeler's wife, and desired to procure the real estate, or the proceeds thereof, for her benefit, and to secure to himself a small debt due him from Wheeler, and proposed to purchase the land from Reitz and Haney for the benefit of Wheeler's wife. He agreed to pay Reitz and Haney $400, take an assignment of the certificates of sale, sell the property, and out of the proceeds retain the $400 paid them, the debt due himself, amounting to $40, and pay the balance to Wheeler's wife. Reitz and Haney were moved by this promise and pretence, and in consideration thereof assigned the certificates to Gwaltney. Gwaltney afterwards sold the land for $2,800, and failed to pay any part thereof to Wheeler's wife.

It was held that Gwaltney, having obtained the land for a nominal price, upon an agreement that he would sell it, and out of the price which he might receive deduct the amount he paid for it and the sum due him, would be compelled to comply with his agreement, and it was accordingly enforced in Mrs. Wheeler's behalf.

In the case before us, it is not claimed that there was any agreement that the plaintiffs were to receive the benefit of the

purchase, by having the lien for taxes surrendered to them without compensation. It might well have been, under the circumstances, that Fred W. Munson would have been held estopped from setting up title to the land, after having purchased the tax lien on the representation that he was doing so in the interest of the plaintiffs and for their protection. But as it did not appear that he was in fact the agent of the plaintiffs, and having paid for the tax claims with his own money, he and those claiming through him were entitled to enforce it for the amount actually due.

If it had been shown, or if the plaintiffs had proposed to show, that Jones sold his claim for a sum less than the amount actually due, upon an agreement that the plaintiffs were to have the benefit of the reduced price, we think the plaintiffs might have availed themselves of the contract. The evidence offered does not go to this extent. The proposition was simply to show that Fred W. Munson represented that his wife and the plaintiffs were the owners of the land, and that he was negotiating for the tax lien in their interest, and that Jones transferred it to Stephen Munson for a sum less than was actually due him on that account. It was not proposed to show how much Jones had abated of the amount due, or that it was agreed that the plaintiffs should have the benefit of such abatement.

We recognize the doctrine to the fullest extent that one who purchases property under a representation that he is acting as the agent of another, and by that means secures a better bargain than he otherwise would, will not be permitted to profit by the fraud. The most that equity can do in such a case, however, is to decree that the purchaser shall be held to be a trustee for the person for whose benefit the purchase was made, or at the suit of the vendor set the sale aside. But it will not require the purchaser to surrender the property to the person for whose benefit it was purchased, except upon equitable terms. As there is nothing here to show that it would be inequitable to require the plaintiffs to

pay the amount of taxes, etc., due, and which, so far as the facts show, were paid by the defendants, we think the court did not err in excluding the testimony.

It is next claimed that the court erred in computing interest at twenty-five per cent. on the amount of taxes paid by the defendants, and those under whom they claim.

The tax sale was made under the act of 1872, which provided for interest at the rate of twenty-five per cent. By sections 3 and 4 of the act of March 5th, 1883, it is provided that the rate of interest shall not be increased above twenty per cent. on the amount paid by the purchaser at tax sales and upon taxes subsequently paid, as well upon sales made under prior, as under laws then in force. The interest should have been computed at twenty per cent. instead of twenty-five per cent., thus making the aggregate taxes $558.25, instead of $640.

The only other error complained of is that the amount assessed for the improvements made by the defendants on the land is excessive. The defendant Fred W. Munson testified that the improvements on the land cost him over four hundred dollars. Some of the plaintiffs' witnesses put the value of the improvements at much less, but in any view of the case, whether the court allowed for the contracts for fencing, which were paid for, but not fully completed, when the suit was commenced, there was evidence tending to sustain the finding.

As it thus appears that the errors assigned are not well founded, except as to the amount of the recovery, the judgment is affirmed upon condition that the appellees shall, within twenty days herefrom, enter in the court below, as of the date of the judgment, a remittitur of the sum of eighty-one dollars and seventy-five cents. Otherwise the judgment will be reversed, with costs. It appears from the record that on the 8th day of October the appellees consented to a remittitur of the sum above mentioned, but as this consent was not unconditional, but only in the event the court should determine to

adhere to a previous decision, the appeal must be at the costs of the appellees. Motion to retax costs sustained.

Filed Jan. 6, 1886.